# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHESSIE LOGISTICS COMPANY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13 C 8864 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| KRINOS HOLDINGS, INC., | ) | |
| KRINOS FOODS LLC, | ) | |
| KRINOS REALTY LLC, and | ) | |
| 4545 JAMES PLACE REALTY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 4545 JAMES PLACE REALTY, LLC, | ) | |
| | ) | |
| Counterplaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHESSIE LOGISTICS COMPANY LLC, | ) | |
| | ) | |
| Counterdefendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross-motions for summary judgment on plaintiff's claims and plaintiff/counterdefendant's motion to supplement its exhibits. For the following reasons, defendants'/counterplaintiffs' motion for summary judgment is granted; plaintiff/counterdefendant's motion for summary judgment is denied; and plaintiff/ counterdefendant's motion to supplement its exhibits is denied as moot.

## BACKGROUND

Plaintiff/counterdefendant, Chessie Logistics Company LLC ("Chessie" or "plaintiff"), brings this action for trespass, negligence, and violation of 49 U.S.C. § 10903 against

defendants, 4545 James Place Realty, LLC ("4545 James Place"); Krinos Holdings, Inc.; Krinos Foods LLC; and Krinos Realty LLC (the "Krinos Entities" or "defendants"). Chessie is a common carrier by railroad that claims to own in fee simple lead railroad tracks (the "Lead Tracks") in an industrial park in Melrose Park, Illinois that are adjacent to, as well as easements for the use of switches and spur tracks (the "Spur Tracks")[1] that cross over, property owned by 4545 James Place where one or more of the Krinos Entities operate an industrial facility (the "4545 Property"). Chessie alleges that defendants trespassed on, and negligently damaged, the Spur Tracks "by performing construction work to install sewer tiles onto the Spur Track drainage ditch and placing landfill on top of" the Spur Tracks. (ECF No. 162, Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶¶ 69-70.) Chessie further alleges that defendants' activities "created a slope on top of" the Spur Tracks, "which caused the landfill to encroach onto" the Lead Tracks, and that defendants later did more damage to the Lead Tracks by using heavy equipment to remove landfill. (*Id.*; ECF No. 165, Pl.'s Mem. at 10.) Chessie seeks $618,442 in damages for what it says would be the cost of removing the landfill and repairing the damage to the tracks and roadbed. (ECF No. 165-2, Pl.'s Ex. 16, Expert Report of Thomas E. Scott Jr. at 6, 29.)

4545 James Place filed a counterclaim for declaratory judgment and ejectment and to quiet title, asserting that Chessie was never granted the easements over its land or, in the alternative, Chessie abandoned them.[2]

---

[1] Chessie refers to these tracks at times as the "Spur Track and Side Track'" and at other times as the "Spur Tracks." For simplicity, the Court will refer to the tracks as the "Spur Tracks."

[2] 4545 James Place indicates that it will withdraw its counterclaim in the event that defendants' motion for summary judgment is granted. (ECF No. 159, Defs.' Mem. at 2 n.1.)

The Court previously dismissed with prejudice Chessie's claim for violation of 49 U.S.C. § 10903, leaving the trespass and negligence claims. Defendants move for summary judgment on both claims, and Chessie cross-moves for summary judgment.[3]

## DISCUSSION

**A.  Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014); *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 499-500 (7th Cir. 2008). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (citation and internal quotation marks omitted). "'[T]he mere existence of *some* alleged factual dispute' will not defeat summary judgment." *Bordelon v. Bd. of Educ.*, 811 F.3d 984, 989 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

On cross-motions for summary judgment, the court considers "the burden of proof that each party would bear on an issue of trial" and then "require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). For each motion, factual inferences are viewed in the nonmovant's favor. *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015). Cross-motions for summary judgment "must be evaluated together, and the court

---

[3]The operative complaint is the Amended Complaint. After the Amended Complaint was filed, the Court granted Chessie's motion to add Krinos Realty LLC as a defendant.

may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012).

### 1. Trespass (Count I)

"To prevail on a trespass claim under Illinois law, a plaintiff must plead and prove negligent or intentional conduct by the defendant which resulted in an intrusion on the plaintiff's interest in exclusive possession of land." *Sak v. CitiMortgage, Inc.*, 940 F. Supp. 2d 802, 804 (N.D. Ill. 2013) (citing *Porter v. Urbana-Champaign Sanitary Dist.*, 604 N.E.2d 393, 398 (Ill. App. Ct. 1992) (citing *Dial v. City of O'Fallon*, 411 N.E.2d 217, 222 (Ill. 1980))). Chessie contends that defendants interfered with its Lead Tracks on land that it owns in fee simple as well as easement rights over the 4545 Property for the "construction, operation, maintenance, repair, and use of" switches and spur track. (Pl.'s Mem. at 2.)[4] The parties do not dispute that Chessie owns the Lead Tracks and underlying real property, but they do dispute whether Chessie owns easement rights over the 4545 Property.

#### a. Chessie's Easement Rights

"An easement is a right or privilege in the real estate of another." *McMahon v. Hines*, 697 N.E.2d 1199, 1203 (Ill. App. Ct. 1998). "The user of the right of the easement enjoys what is referred to as a dominant estate over the used land, which is the servient estate." *Id.* "In the context of easements, trespass occurs when there is a material interference with the right of the owner of the dominant estate to reasonable use of the easement." *Chi. Title Land Trust Co. v. JS*

---

[4]Chessie quotes from Exhibit A to its Quit Claim Deed. Exhibit 2 to Chessie's memorandum is the first page of the "Quit Claim Deed," which refers to the "attached" Exhibit A. Chessie failed to include the second page of its quitclaim deed or Exhibit A, but defendants submitted the complete document as their Exhibit 20.

4

*II, LLC*, 977 N.E.2d 198, 218 (Ill. App. Ct. 2012). "To acquire an easement by grant, no particular words are necessary, but the words that are used must clearly show an intention by the grantor to confer an easement, and such terms must be definite, certain, and unequivocal." *McMahon*, 697 N.E.2d at 1203. "A court interprets an easement in the same manner it would interpret any agreement between parties. Generally, an instrument creating an easement is construed in accordance with the intention of the parties, which is ascertained from the words of the instrument and the circumstances contemporaneous to the transaction, including the state of the thing conveyed and the objective to be obtained. However, if the language of an agreement is facially unambiguous, then the trial court interprets the contract as a matter of law without the use of extrinsic evidence." *River's Edge Homeowners' Ass'n v. City of Naperville*, 819 N.E.2d 806, 809 (Ill. App. Ct. 2004); *527 S. Clinton, LLC v. Westloop Equities, LLC*, 7 N.E.3d 756, 765 (Ill. App. Ct. 2014).

It is Chessie's burden to demonstrate that it owns easement rights over the 4545 Property. Chessie contends that J. Emil Anderson & Son, Inc. ("JEAS") conveyed these rights to it by quitclaim deed. The quitclaim deed, dated July 23, 2013, provides as follows:

> THE GRANTOR, **J. EMIL ANDERSON & SONS** [sic]**, INC.**, . . . for and in consideration of Ten and No/100 DOLLARS ($10.00), and other good and valuable consideration, . . . CONVEYS and QUIT CLAIMS to **CHESSIE LOGISTICS CO., LLC**, . . . all of the Grantor's rights and interest in the Premises described on **Exhibit "A"** which is attached hereto and made a part hereof.

(ECF No. 160-4, Defs.' Ex. 20, Quit Claim Deed, at 1.) Exhibit A, which is titled "LEGAL DESCRIPTION" and bears the sub-heading "EASEMENT PARCELS," states:

> NON-EXCLUSIVE EASEMENT FOR CONSTRUCTION, OPERATION, MAINTENANCE, REPAIR AND USE OF SWITCH AND SPUR TRACK OVER LOTS 3, 6, 15, 16, 21 AND 23, AS TO THAT PART OF LOT 7, LYING SOUTH OF THE EASTERLY EXTENSION OF THE NORTH LINE OF LOT

14 AND LYING EAST OF THE SOUTHERLY EXTENSION OF THE WEST LINE OF LOT 14, IN J. EMIL ANDERSON'S RESUBDIVISION OF PART OF ANDERSON'S NORTH-MANNHEIM INDUSTRIAL SUBDIVISION IN THE SOUTHEAST ¼ OF SECTION 32, TOWNSHIP 40 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS AS CREATED BY GRANT OF EASEMENT RECORDED AS DOCUMENT NUMBER 17649052.

(*Id.* at 3.)[5] Underneath that language appear typewritten and handwritten lists of associated Property Identification Numbers. 4545 James Place owns Lot 6 within the industrial subdivision.

Because the quitclaim deed states that the "non-exclusive easement" that was conveyed to Chessie was that "created by grant of easement recorded as document number 17649052," Chessie's easement ownership hinges on that document. Pursuant to that Grant of Easement ("Grant"), which is dated June 5, 1959, JEAS granted to the owners of Lots 1 through 12 in the industrial subdivision a "permanent and perpetual right, privilege and non-exclusive easement for the construction, operation, maintenance, repair and use of a switch and spur track" over "Lots Three (3), Five (5), Seven (7) and Eight (8)." (ECF No. 160-4, Defs.' Ex. 17, Grant of Easement ¶¶ 1, 11.) There is no mention in the Grant of any easement over Lot 6, which is now the 4545 Property; the only mention of Lot 6 therein is the grant of easements *to* its owner and subsequent owners.

Chessie devotes little discussion to the pivotal issue of whether it was conveyed any easement rights over the 4545 Property. In fact, Chessie nearly overlooks that in order to prove

---

[5]The associated Purchase and Sale Agreement between JEAS and Chessie provided that, for $2,000, JEAS would convey to Chessie title to Lots 3, 5, 7, 8, and 9 in the industrial subdivision, as well as "interests in certain easements described on Exhibit A-2." (ECF No. 160-3, Defs.' Ex. 8, Purchase and Sale Agreement, at 1-2, Ex. A-1.) But Exhibit A-2 bears only the heading "THE EASEMENTS" and is otherwise blank. (*Id.*, Ex. A-2.)

its claims of trespass and negligence, it bears the burden of proving that it has such rights. Chessie's argument in support of its own motion verges on simply assuming so, and its primary argument in response to defendants' motion is that defendants' "affirmative defense" is preempted. The Court already rejected this unsupported preemption argument when it ruled on Chessie's motion to dismiss the counterclaim, explaining that "[w]hat Chessie is essentially saying is that although it has chosen to resort to this court for resolution of claims that will require it to prove that it possesses an easement for use of the spur track, the doctrine of primary jurisdiction completely deprives 4545 James Place of its defenses to those claims and the ability to obtain the corresponding relief it seeks." (ECF No. 177, Mem. Op. & Order of Mar. 31, 2016.) Moreover, defendants' contention that Chessie does not have easement rights over the 4545 Property is not an affirmative defense. The essence of an affirmative defense is that it assumes the truth of what plaintiff alleges, yet asserts facts and arguments that will nonetheless defeat the plaintiff's claim. *See, e.g.*, *Bell v. Taylor*, 827 F.3d 699, 704-05 (7th Cir. 2016). Defendants *deny* Chessie's allegation that it owns an easement over the 4545 Property.

Chessie would have the Court focus on the encumbrances on 4545 James Place's title. 4545 James Place's contract to purchase Lot 6 provides that the conveyance is subject to the "Permitted Exceptions," which are set forth on Exhibit B to the contract. (ECF No. 160-4, Defs.' Ex. 21, Purchase and Sale Agreement, ¶ 4E.) Exhibit B, in turn, refers to certain paragraphs of Schedule B, which is Chicago Title Insurance Company's Commitment for Title Insurance (the "Commitment"). Among those specific paragraphs of the Commitment are "exceptions" that include "spur track easement over the southeasterly portion of the land as disclosed by survey prepared by Preferred Survey, Inc. dated January 22, 2001" as well as "railroad rights-of-way and spur tracks over the easterly 15 feet of the land as disclosed by" the

7

same survey. (*Id.*, Ex. B, Schedule B, at B2.)[6] Neither the survey nor the documents related to the transaction state that the easements are for the benefit of any particular lot. (*Id.*; ECF No. 160-4, Defs.' Ex. 22, 2001 Survey.)

Chessie's focus is misplaced; the fact that the 4545 Property is subject to these easements does not establish that *Chessie* owns them. The claims at issue in the instant motions are Chessie's claims, not defendants' counterclaim to quiet title. Chessie is unable to identify any document that granted an easement in its favor over Lot 6, the 4545 Property. Chessie's Purchase and Sale Agreement did not identify any particular easement, and although its quitclaim deed purports to convey to Chessie an easement over Lot 6, that conveyance is limited by what was "created by Grant of Easement," and the Grant did not create such an easement.[7] Chessie admits that its title insurance commitment likewise does not refer to any easement rights over Lot 6. (Pl.'s Resp. Defs.' L.R. 56.1 Stmt. ¶ 44.)

Chessie maintains that this Court should examine "the historical use of the spur tracks and properties similarly situated to" the 4545 Property, instead of confining its analysis to the four corners of the Grant of Easement. (Pl.'s Mem. at 3.) Chessie then describes a 1979 Grant of Easement from JEAS to the Purex Corporation, whereby JEAS quitclaimed easement rights to Purex and which "references" a deed to Purex's precedessor, the Anday Building Corporation.

---

[6] 4545 James Place's Special Warranty Deed provides that the conveyance is subject to the same "Permitted Exceptions," but refers to a June 4, 2010 survey. (ECF No. 160-4, Defs.' Ex. 12.)

[7] Moreover, as a matter of law, JEAS could convey to Chessie in the quitclaim deed only those easement rights that JEAS possessed at that time. *See Lindy Lu LLC v. Ill. Cent. R.R. Co.*, 984 N.E.2d 1171, 1176 (Ill. App. Ct. 2013) ("Unlike a warranty deed, in which the grantor makes certain guarantees to the grantee, a quitclaim deed conveys only such title as the grantor has and contains no covenants or warranties whatsoever.").

8

Chessie also contends that JEAS historically maintained and repaired all switches and spur tracks on the properties and contracted with the Indiana Harbor Belt Railroad for rail service to the properties. According to Chessie, "[t]hese circumstances demonstrate that JEAS, when it recorded the Grant [of Easement] in 1959, intended to have control over the construction, operation, maintenance, repair and use of all rail facilities" in its subdivision "and that pursuant to that purpose the Grant granted to JEAS easements over the properties; and that JEAS could convey these rights to another." (*Id.*)

Chessie's argument is neither developed nor coherent. And it is difficult to see how events and real property transactions that occurred well after JEAS executed the Grant of Easement in 1959 can shed light on what easements JEAS intended to create in that document. More importantly, the language in the Grant of Easement is unambiguous. The Grant did not create easements over every lot in the subdivision; rather, by its plain language, it created easements only over Lots 3, 5, 7, and 8, not Lot 6. Chessie does not argue that the language of the Grant is ambiguous,[8] yet it urges the Court to consider extrinsic evidence to essentially rewrite the document. Traditional contract interpretation principles in Illinois require that a facially unambiguous contract be interpreted without the use of parol evidence. *See Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1990). Therefore, the Court will not look beyond the four corners of the Grant to determine what easements were conveyed therein.

Chessie has failed to demonstrate that a genuine issue of material fact exists as to whether it acquired an easement over the 4545 Property. On this record, no finder of fact could

---

[8]A contract is not ambiguous merely because the parties do not agree on its meaning or intent. An ambiguity occurs only when the language of a contract is "reasonably susceptible to more than one meaning." *Douglas Theater Corp. v. Chi. Title & Trust Co.*, 569 N.E.2d 88, 92-93 (Ill. App. Ct. 1991).

reasonably rule that it did. Therefore, defendants are entitled to summary judgment on Chessie's trespass and negligence claims, to the extent the claims are based on interference with Chessie's alleged easements.

### b. Intrusion on Chessie's Property

Even if Chessie could show that it owns the claimed easements, it has not produced any evidence from which a reasonable finder of fact could determine that defendants intruded on that interest. Nor has it produced any evidence from which a reasonable finder of fact could conclude that defendants intruded on its interest in the property it owns in fee simple, where the Lead Tracks are located.

Chessie alleges that defendants intruded on its land in connection with defendants' construction activities, by placing clay landfill on top of the Spur Tracks (which changed the topography of the area around the Lead Tracks) and by damaging the Lead Tracks by using heavy equipment to remove landfill. Defendants argue that the "independent contractor rule" precludes Chessie from recovering against them for the intrusions because a subcontractor, a company called A-Max Inc. ("A-Max"), performed the construction work and was not under defendants' control.

Defendants submit the Declaration of Eric Moscahlaidis, one of their corporate officers, who states as follows: 4545 James Place retained Petro Paliouras as a contractor to perform work to repair stormwater drainage issues on the 4545 Property; defendants themselves did not perform any of the work; without notifying the defendants, Mr. Paliouras retained A-Max to perform the work; defendants had no expectation or belief that work would be done on the property adjacent to the 4545 Property; defendants had no knowledge that Mr. Paliouras or A-Max would enter plaintiff's property; defendants did not authorize, control, direct, supervise, or

10

observe A-Max's work; defendants did not deal directly with A-Max, did not oversee the work, and did not know what specific work was done; and defendants did not contract with or pay A-Max. (ECF 160-4, Defs.' Ex. 15, Decl. of Eric Moscahlaidis ¶¶ 7-14.) Chessie submits no evidence that defendants themselves performed any of the construction work. It contends that defendants are liable for Mr. Paliouras's actions (and, evidently, those of A-Max) because he was acting as their agent, not as an independent contractor.

"One can be liable in trespass for an intrusion by a third party if he acts with knowledge that his conduct will, with a substantial degree of certainty, result in the intrusion." *Sak*, 940 F. Supp. 2d at 804 (citing *Dietz v. Ill. Bell Tel. Co.*, 507 N.E.2d 24, 26 (Ill. App. Ct. 1987)). "Thus, a person who aids, abets, assists, or directs the commission of a trespass by another is liable for trespass." *Id.* (citing *Dietz*, 507 N.E.2d at 26). Furthermore, the doctrine of respondeat superior, which provides that a principal may be liable for the tortious actions of its agent even if the principal itself does not engage in any conduct in relation to the plaintiff, is an exception to the general rule that a person injured by the tortious act of another must seek relief from the person who caused the injury. *Jackson v. Bank of N.Y.*, 62 F. Supp. 3d 802, 814 (N.D. Ill. 2014) (analyzing a trespass claim) (citing *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 427 (Ill. 2012)). Respondeat superior, however, cannot typically be used to impose vicarious liability on a principal for the tortious acts of its independent contractor. *Id.* (citing *Lawlor*, 983 N.E.2d at 427). The determination of whether someone is an agent or an independent contractor is factually intensive, *id.* (citing *Uesco Indus. Inc. v. Poolman of Wis., Inc.*, 993 N.E.2d 97, 112 (Ill. App. Ct. 2013)), and "[t]he analysis turns primarily on the level of control that the alleged agent retains over the performance of its assigned work," *id.* (citing *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 279 (Ill. 2004)). "In a principal-agent relationship, the principal retains the right to

control the manner and method in which the work is carried out by the agent. By contrast, an independent contractor is one who undertakes to produce a given result but in the actual execution of the work is not under the orders or control of the person for whom he does the work but may use his own discretion in things not specified and without his being subject to the orders of the person for whom the work is done in respect to the details of the work." *Id.* (internal quotation marks, ellipsis, brackets, and citations omitted). "Other factors that bear on the question of whether one is properly considered an agent or an independent contractor include '(1) the question of hiring; (2) the right to discharge; (3) the manner of direction of the servant; (4) the right to terminate the relationship; and (5) the character of the supervision of the work done.'" *Id.* (quoting *Lawlor*, 983 N.E.2d at 427). Chessie bears the burden of demonstrating that the entrants to its property were the agents of defendants. *See id.* (citing *Lawlor*, 983 N.E.2d at 427).

Defendants admit that 4545 James Place directed Mr. Paliouras to fix a drainage problem. But there is no evidence that defendants acted with knowledge that the intrusions on Chessie's property were likely to result from the ordinary course of doing this work. Furthermore, Chessie pays lip service to the principles of agency; its discussion is cursory. Chessie asserts that, "based on the actions and conduct of the parties," Mr. Paliouras was defendants' agent, and Chessie goes on to cite various immaterial facts about the general nature of the relationship between Mr. Paliouras and defendants. (Pl.'s Mem. at 5-6.) Chessie fails to present any evidence that defendants had the right to control the manner and method of Mr.

Paliouras's work, and the limited evidence it does present suggests the opposite.[9] There is likewise no evidence that defendants had anything to do with Mr. Paliouras's retention of A-Max to perform work that resulted in landfill movement that affected the Lead Tracks.[10]

Chessie has failed to present evidence creating a genuine issue of material fact for trial as to whether defendants acted with knowledge that the work they directed would likely result in an intrusion on Chessie's property or whether the entrants to its property were defendants' agents. The Court is unable to say, even on a sympathetic reading of the record, that a jury could so find. The Court therefore grants defendants' motion for summary judgment on Chessie's trespass claim, as well as its negligence claim to the extent it is based on trespass.

2.     **Negligence (Count II)**

Although Chessie states on page 14 of its opening memorandum that its negligence claim is "based solely on trespass," on page 12 it argues that defendants were negligent *per se* based on their violations of notice provisions of the Illinois Adjacent Landowner Excavation Protection Act (the "Protection Act"), 765 ILCS 140/0.01 *et seq.*, and, in connection with the construction activities, certain sections of the Illinois Administrative Code that concern railroad property.

---

[9]Chessie's presentation of evidence is slipshod, and many of the inferences it draws from this evidence are unwarranted. For example, Chessie states: "Pursuant to a verbal agreement, clay landfill was placed on top of the spur track ending in a bumping post, the side track and in between the building and the spur track ending in a bumping post." (ECF No. 164, Pl.'s LR 56.1 Stmt. ¶ 55.) For this proposition, Chessie cites its Exhibit 6, an email to its counsel from an individual named "Anna Kakareko," who apparently is affiliated with A-Max but whose involvement and role is unclear. Aside from the obvious hearsay problem with this exhibit (which Chessie does not offer to remedy in its motion for leave to supplement its exhibits), the purported fact does not follow from what is stated in the email. Moreover, several of Chessie's responses to defendants' statement of facts are improperly disputed, including its responses to paragraphs 73, 74, and 75, which deal with A-Max. (Pl.'s Resp. Defs.' LR 56.1 Stmt.)

[10]Defendants note that Chessie did not take Mr. Paliouras's deposition. There is no testimony from him in the record.

Defendants point out, correctly, that Chessie did not assert negligence *per se* in the amended complaint or allege therein that defendants violated the Protection Act or Administrative Code. Accordingly, defendants did not receive adequate notice of the claim. The Court concludes that Chessie forfeited its negligence *per se* argument by raising it for the first time at summary judgment. *See Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 606 (7th Cir. 2009) (district court may reject a claim raised for the first time at summary judgment); *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741 n.6 (7th Cir. 2008) (by failing to assert in her complaint that the defendant failed to adequately notify her of her FMLA rights and thereby impermissibly interfered with their exercise, plaintiff forfeited the argument).

In light of these rulings, the Court need not address the arguments concerning the economic loss doctrine, the nature of the damages sought, causation, or mitigation, or those regarding evidentiary materials and fact statements that were not necessary for the Court to consider.

**B.     Plaintiff's Motion for Leave to Supplement Exhibits**

After defendants filed their responses to Chessie's statements of facts and objected therein to several of Chessie's exhibits, Chessie filed a motion "for leave to supplement exhibits in statement of material facts *nunc pro tunc*." In its motion, Chessie seeks to supplement its Exhibits 8, 13, 14, 24, 25, 34, and 35 in an effort to remedy defendants' foundational and hearsay objections and objections to Chessie's expert report. Chessie's view is that the exhibits are "extremely probative to this lawsuit." (ECF No. 172, Pl.'s Mot. Leave Suppl. at 3, 5, 7.) Exhibits 13, 14, 24, and 25 have to do with track conditions, track use, and damages, issues that were not necessary to address given the Court's rulings. As for Exhibits 8, 34, and 35, those were proffered with respect to the issue of agency, but even if the Court were to consider their

substance, it is not probative of the level of control that defendants had over the performance of the construction work or whether they acted with knowledge that the intrusions on Chessie's property were likely to result from the ordinary course of doing the work. Because the Court did not find it necessary to consider plaintiff's Exhibits 8, 13, 14, 24, 25, 34, or 35 in reaching its decisions, Chessie's motion for leave to supplement its exhibits is denied as moot.

## CONCLUSION

The motion of Chessie Logistics Company LLC for summary judgment [161] is denied. The motion of Chessie Logistics Company LLC to supplement exhibits [172] is denied as moot. The motion of Krinos Holdings, Inc.; Krinos Foods LLC; Krinos Realty LLC; and 4545 James Place Realty, LLC for summary judgment [158] is granted. On plaintiff's claims, judgment will be entered in defendants' favor and against plaintiff. Given 4545 James Place's statement of its intentions regarding the counterclaim, it is directed to file an appropriate motion by December 9, 2016.

**SO ORDERED.**                                   ENTERED:   December 2, 2016

_____
**JORGE L. ALONSO**
**United States District Judge**